IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| STUART L. SKINNER, JR., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:19-cv-468 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
|     Defendant. ) | |

### MEMORANDUM OPINION

This is a medical negligence case brought against the United States pursuant to the Federal Torts Claims Act[1] based on the alleged wrongful death of Decedent Stuart L. Skinner, Sr. (the "Decedent") while under the care of doctors at medical centers run by the Department of Veterans Affairs. At issue now, after full discovery, is whether the parties' proposed settlement of $475,000, inclusive of attorney's fees and costs, should be approved. As the parties correctly agree, this matter is governed by Virginia law, which requires court approval of the settlement. *See* Va. Code § 8.01-55. Specifically, at issue is whether the settlement is fair, just, and reasonable and worthy of judicial approval. Also at issue is (i) the identity of the appropriate statutory beneficiaries as prescribed by Virginia law and (ii) the appropriate apportionment of the settlement proceeds among the statutory beneficiaries.

The matter came before the Court for a telephonic hearing on September 2, 2020 at 10:00 a.m., attended by all of the parties as well as all potential beneficiaries. For the reasons stated below, the settlement is fair and reasonable and the settlement will be approved.

---

[1] 28 U.S.C. § 1346.

1

# I.

As alleged in the complaint, the Decedent died of esophageal cancer and its metastases to his liver on December 17, 2017. On April 17, 2019, Plaintiff Stuart L. Skinner, Jr., as the executor for the Decedent's estate, filed a complaint against the government alleging that doctors at the Fort Belvoir Community Based Outpatient Clinic and the Washington, DC VA Medical Center failed to diagnose the Decedent with cancer, which resulted in his wrongful death. As part of discovery, plaintiff retained three expert witnesses and the government retained two expert witnesses to opine on the medical issues involved in the case. In addition to the medical experts retained by the parties, the parties deposed the several treating physicians involved in the case, as well as certain of the Decedent's family members. In total, Plaintiff listed twelve potential witnesses on his witness list and the government listed six potential witnesses. At the conclusion of discovery, the government filed a motion *in limine* seeking to exclude certain opinions expressed by one of plaintiff's retained experts.

Following the completion of all discovery in the case and briefing of the motion *in limine*, the parties – plaintiff and the government – reached a settlement in the case and filed a joint motion for court approval of the settlement. *See* Joint Motion for Settlement Approval (Dkt. 31) ("Joint Motion"). Specifically, plaintiff, as executor, and the government agreed to settle the case for a total sum of $475,000, inclusive of attorney's fees and costs. *See id.* at 2. In the Joint Motion, plaintiff indicated his belief that the settlement was fair and reasonable. *Id.* at 3. Thus, the parties requested that the settlement amount be distributed as follows: (i) $148,750 to plaintiff's counsel for attorney's fees and costs; (ii) $195,750 to plaintiff, the executor of the estate and the Decedent's son; (iii) $65,250 to beneficiary Stethanie L. Skinner, the Decedent's daughter; and (iv) $65,250 to Ulonda L. Skinner, the Decedent's daughter. *See id.* at 4.

Contemporaneously with the Joint Motion, each party – plaintiff and the government – filed a notice regarding the identity of persons who qualify as a beneficiary under Virginia law. In plaintiff's Notice, plaintiff asserted that there was a dispute between the parties regarding whether Stewart L. Skinner, Jr. and Patricia Reidmann qualify as statutory beneficiaries entitled to notice of the settlement. *See* Pl.'s Notice Regarding Settlement Approval Hearing (Dkt. 33) ("Plaintiff's Notice"). Plaintiff argued that neither Stewart L. Skinner, Jr. nor Patricia Reidmann qualifies as a potential beneficiary under Virginia law or was entitled to notice of the settlement hearing. *See id.* An Order subsequently issued requiring plaintiff to provide notice of the settlement approval hearing to all potential beneficiaries, including Stewart L. Skinner, Jr. and Patricia Reidmann. *See* Order, dated May 29, 2020 (Dkt. 36).

Plaintiff later filed a supplemental notice indicating that a second dispute had arisen regarding the settlement, namely concerning how the settlement proceeds should be distributed amongst the beneficiaries. *See* Pl.'s Second Supplemental Notice (Dkt. 38) ("Plaintiff's Supplemental Notice"). In Plaintiff's Supplemental Notice, plaintiff asserted that plaintiff and his half-sisters, Ulonda and Stethanie Skinner, had originally agreed on a 60/20/20 split of the settlement proceeds. *See id.* As of June 2020, however, Ulonda and Stethanie Skinner had indicated to plaintiff's counsel that they no longer agreed to the planned distribution of the settlement proceeds. *Id.* Accordingly, on June 11, 2020, an Order issued directing all of the potential beneficiaries to: (i) state what facts they allege establish that they are a beneficiary; (ii) state what facts they allege establish that any other potential beneficiary is not a beneficiary; (iii) state whether they approve of the $475,000 settlement amount; and (iv) state what they believe is the appropriate distribution of settlement proceeds. *See* Order, dated June 11, 2020 (Dkt. 44).

Patricia Reidmann did not file a response to the June 11, 2020 Order. On July 10, 2020,

Stethanie, Ulonda, and Stewart L. Skinner filed a joint response, *pro se*, arguing that Stewart L. Skinner, Jr. is a beneficiary and that all four children, namely themselves plus plaintiff, should share equally in the settlement proceeds. *See* Beneficiaries Ulonda Skinner, Stewart L. Skinner, Jr. and Stethanie Skinner's Response (Dkt. 46) ("Joint Skinner Response"). On July 13, 2020, Plaintiff submitted a response, by counsel, reiterating his prior arguments that Patricia Reidmann and Stewart L. Skinner, Jr. are not beneficiaries of the Decedent and that the appropriate distribution of proceeds is 60% to plaintiff and 20% each to Ulonda and Stethanie Skinner. *See* Beneficiary Stuart L. Skinner, Jr.'s Pleading in Response (Dkt. 47) ("Stuart L. Skinner, Jr. Response").

In lieu of a hearing in court,[2] a telephonic hearing was held on September 2, 2020. The hearing was attended by all potential beneficiaries: (i) Stuart L. Skinner, Jr. (plaintiff) was represented both in his capacity as executor and in his capacity as a beneficiary; (ii) Stewart L. Skinner, Jr. appeared *pro se*; (iii) Stethanie L. Skinner appeared *pro se*; and (iv) Ulonda L. Skinner appeared *pro se*. The government also appeared by counsel. At the hearing, all of the potential beneficiaries, as well as plaintiff and the government, agreed that the proposed $475,000 settlement was just, fair, and reasonable.

Each of the potential beneficiaries then discussed the distribution of the settlement proceeds. Plaintiff, by counsel and in his capacity as a beneficiary of the Decedent, asserted that the he was closest to the Decedent and that the distribution should be as originally proposed: sixty percent to plaintiff and twenty percent each to Ulonda and Stethanie Skinner. Plaintiff argued that Stewart L. Skinner, Jr. is not a proper beneficiary and had no relationship with the

---

[2] United States Chief Judge Mark S. Davis of the Eastern District of Virginia has issued General Order 2020-16, which requests that district court judges within the Eastern District of Virginia continue to use teleconferencing to the greatest extent possible. *See* Gen. Order 2020-16. Accordingly, the hearing in this case was held telephonically. *See* Amended Order, dated August 6, 2020 (Dkt. 50).

4

Decent. Ulonda Skinner stated that, although she had originally agreed to the split proposed by plaintiff, she had understood that plaintiff would be covering the attorney's fees and costs from his portion of the proceeds. She argued that the distribution should be equal and that she, Stethanie, and Stewart L. Skinner, Jr. had been abandoned by the Decedent. Stethanie Skinner stated that she had never agreed to the split proposed by plaintiff and that she believed the division amongst herself, Ulonda, plaintiff, and Stewart L. Skinner, Jr. should be equal. Stewart L. Skinner, Jr. also agreed that the distribution should be equal among himself, Ulonda, Stethanie, and plaintiff. Stewart L. Skinner, Jr. asserted that he was angry that the Decedent, his father, had abandoned him and was not in his life. Stewart L. Skinner, Jr. also asserted that he was "haunted" by the fact that he did not have a last conversation with the Decedent to resolve his feelings of abandonment.

## II. The Settlement is Fair and Reasonable

There is no doubt that this action, brought pursuant to the Federal Tort Claims Act, requires the application of the law of the State in which the negligent act or omission occurred. *See* 28 U.S.C. § 1346(b)(1). There is also no doubt, as the parties agree, that the relevant wrongful acts occurred in Virginia and that Virginia law applies. In this respect, Virginia law requires judicial approval of the compromise of claims for wrongful death actions. *See* Va. Code § 8.01-55 ("The personal representative of the deceased may compromise any claim as to damages arising under or by virtue of § 8.01-50 . . with the approval of the court in which the action was brought . . ."). The Decedent died from esophageal cancer and its complications. *See* Joint Motion at 2. Plaintiff asserts that medical personnel employed by the Department of Veterans Affairs breached the applicable standard of care by failing to perform tests that would have detected his cancer earlier such that the Decedent's life would have been extended. *Id.* The

parties agree that $475,000 is a fair and reasonable settlement of this case based on: (i) the nature of the liability asserted; (ii) the time and expense involved in further litigation of this case, and (iii) the inability to predict the outcome of the litigation.

A review of the record as a whole makes clear that the proposed settlement amount of $475,000 is fair, just, and reasonable in this case. Clearly, the amount of the proposed settlement is substantial and adequately recognizes the claims asserted. Furthermore, the settlement was reached after the close of discovery and after a motion *in limine* was filed. Counsel for both parties have devoted significant time and expense to develop the record in this case, which, had it gone to trial, would have required extensive expert testimony. The settlement agreement appears to have been negotiated at arm's length and both parties – plaintiff and the government – are represented by competent, experienced counsel in this litigation. Additionally, in the course of the telephonic hearing, all potential beneficiaries appearing in the course of the hearing stated that they approved of the settlement amount of $475,000.

Additionally, the attorney's fees and costs sought by plaintiff's counsel are reasonable. In this regard, the attorney's fees constitute approximately 25% of the total settlement amount and are reasonable in the circumstances. Specifically, plaintiff's counsel seeks: (i) $106,875 to TrialHawk Litigation Group, LLC for attorney's fees; (ii) $11,875 to Bertram Law Group for attorney's fees; (iii) $26,852 for reimbursement of advanced litigation costs; and (iv) $3,147 for payment of unknown costs with any remainder paid to the beneficiaries. In accordance with 28 U.S.C. § 2678, the combined attorneys' fees for services rendered total $118,750, which is 25% of the total settlement amount of $475,000. *See* 28 U.S.C. § 2678 (providing that no attorney shall charge or receive fees in excess of twenty-five percent for any award made pursuant to the Federal Tort Claims Act).

It is important to note that discovery was extensive. Plaintiff's counsel retained three expert witnesses to provide opinions on the medical issues involved in the case. Plaintiff's counsel also had to depose the treating physicians and the two expert witnesses retained by the government. Additionally, several members of plaintiff's family, including all four potential beneficiaries, were deposed during the litigation. In total, Plaintiff listed twelve potential witnesses on his witness list and the government listed six potential witnesses. In addition to discovery, the parties had also fully briefed the government's motion *in limine* regarding whether one of plaintiff's experts should be precluded from providing certain opinions. Accordingly, the attorney's fees and costs are reasonable in the circumstances.

In sum, the proposed settlement of $475,000, inclusive of attorney's fees and costs, is fair, just, and reasonable. In addition, the attorney's fees and costs are also reasonable and will be paid first from the settlement proceeds of $475,000.

### III.

Approval of the total settlement amount does not end the analysis as it is now necessary to consider the distribution of the remaining $326,250 in settlement proceeds. Because the potential beneficiaries dispute both who constitutes a beneficiary and how the settlement proceeds should be distributed, the Court must resolve both of these issues. Virginia law provides that, in the event that beneficiaries in a wrongful death case do not agree on the distribution of the settlement proceeds, the court that approved the settlement amount must proceed to consider must direct the distribution pursuant to Va. Code § 8.01-52. *See* Va. Code § 8.01-55 ("If the court approves the compromise, and the parties in interest do not agree upon the distribution to be made of what has been or may be received by the personal representative under such compromise, . . . the court shall direct such distribution as a jury might under § 8.01-52 as

to damages awarded by them.").

## A. Beneficiaries

Virginia Code § 8.01-53 provides that damages awarded in a wrongful death case are awarded to: "the surviving spouse, children of the deceased, and children of any deceased child of the deceased, and the parents of the decedent." Va. Code § 8.01-53. All parties and potential beneficiaries correctly agree that plaintiff, Stethanie L. Skinner, and Ulonda L. Skinner are beneficiaries of the Decedent as the Decedent's biological children. All of the potential beneficiaries agree that Patricia Reidmann is not a beneficiary, because she was adopted out of the Decedent's family, and she has not appeared in this action, despite notice of the settlement. Plaintiff disputes that Stewart L. Skinner, Jr. is the biological son of the Decedent. Thus, the principal remaining issues are whether Stewart L. Skinner and Patricia Reidmann are statutory beneficiaries of the Decedent.

The record reflects that the Decedent was married to Mildred Quinn in 1967. *See* Certificate of Marriage (Dkt. 46-1). The dispute over whether Stewart L. Skinner, Jr. is a statutory beneficiary stems from the fact that the Decedent was deployed to Vietnam from April 29, 1969 to June 2, 1970 and that Steward Lewis Skinner, Jr.[3] was born on February 24, 1970. *See* Army Service Records (Dkt. 47-2); Certificate of Live Birth (Dkt. 46-3). This birth occurred approximately 301 days after the Decedent was deployed to Vietnam. The question then arises whether this absence precludes the Decedent from being Stewart L. Skinner, Jr.'s father. It does not. In Virginia, there is a presumption of legitimacy for a child born of a marriage. *See Cassady v. Martin*, 220 Va. 1093, 1097 (Va. 1980) (noting that "[a] presumption of law exists in favor of the legitimacy of a child born in wedlock"). That presumption may be rebutted by a

---

[3] "Steward" appears to be a typographical error in the birth certificate, but all parties appear to agree that the attached document is the birth certificate for Stewart L. Skinner, Jr. – the potential beneficiary.

8

showing of non-access of the husband to the wife, but there must be evidence of non-access "beyond all reasonable doubt." *Id.* The Supreme Court of Virginia has held that "[i]mprobability of known access by the husband merely of itself is not sufficient to repel the presumption." *Gibson v. Gibson*, 207 Va. 821, 825 (Va. 1967). Here, the presumption applies because Stewart L. Skinner, Jr. was born during the marriage of the Decedent to Mildred Skinner, Stewart L. Skinner, Jr.'s mother. Plaintiff fails to rebut this presumption.

Plaintiff relies on the fact of the Decedent's deployment and two arguments to establish non-access and rebut the presumption. First, plaintiff argues that the normal length of a human pregnancy is 280 days and that the time between the Decedent's deployment and Stewart L. Skinner, Jr.'s birth is approximately 301 days. But plaintiff neither cites to any evidence to support his assertion that a pregnancy is 280 days or that a pregnancy cannot last 301 days. Indeed, in his pleadings, Stuart L. Skinner, Jr. does *not* argue that it is impossible for a pregnancy to last more than 301 days, only that it is improbable and unlikely. *See* Dkt. 37, at 5 (describing scenario as "highly improbable"); Dkt. 47, at 3 (describing scenario as "highly unlikely"). Such speculation does not satisfy the *Cassady* standard. As the Supreme Court of Virginia held in *Gibson*, "improbability" is not enough to rebut the presumption. *Gibson*, 207 Va. at 825. Moreover, at least one study show that, while a pregnancy generally lasts approximately 280 days, some pregnancies can last more than 300 days.[4] Second, plaintiff asserts, without citation to any evidence, that neither the Decedent nor Mildred Skinner travelled to see one another during the Decedent's period of deployment to Vietnam. Because plaintiff was not yet born at the time of the Decedent's deployment, plaintiff could not have first-hand knowledge of the

---

[4] *See* A.M. Jukic, *et al.*, *Length of Human Pregnancy and Contributors to its Natural Variation*, Hum. Reprod. 2013 Oct. (10): 2848-2855, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3777570/ (last visited Sept. 1, 2020) (noting that 5 births or 4% of the births in the data sample occurred after 300 days of gestation).

alleged fact. Thus, again, although it is improbable that there was contact between the Decedent and Mildred Skinner during the Decedent's deployment, it does not appear impossible on this record. Accordingly, plaintiff. has not rebutted the presumption of legitimacy as to Stewart L. Skinner, Jr.

This conclusion is further buttressed by other evidence in the record. In depositions, Stethanie Skinner and Ulonda Skinner testified, under oath, that Stewart L. Skinner, Jr. is the Decedent's son. *See* Gov't Notice at ¶ 4 (Dkt. 34). Stehanie, Ulonda, and Stewart L. Skinner, Jr. also assert that the Decedent claimed Stewart L. Skinner, Jr. as a dependent on his tax returns when Stewart L. Skinner, Jr. was a child, which, in Virginia, is evidence of paternity. *See* Joint Skinner Response; Va. Code § 64.2-103(4). Additionally, the portion of the divorce decree filed in this action shows that, when Mildred Skinner and the Decedent divorced in 1978, there were 4 children of the marriage – which would only be true if Stewart L. Skinner, Jr. was included as a child of the marriage. Joint Skinner Response at 2; Dkt. 46-2. That the Decedent permitted, by general course of conduct, for Stewart L. Skinner, Jr. to use not only his surname, but to have Stewart L. Skinner, Jr. be named after him, is also evidence of paternity in Virginia. *See* Va. Code § 64.2-103(3). Additionally, the Decedent was listed as Stewart L. Skinner's father on the birth certificate. *See* Certificate of Live Birth.

With respect to Patricia Reidmann, the record discloses that she was fathered by the Decedent in Germany in 1976 and was adopted by Theodor Riedmann and Hermine Hedwig Franziska Reidmann in 1977. *See* Adoption Records (Dkt. 47-4). Under Virginia law, adoption divests the birth parents of "all legal rights and obligations in respect to the child." Va. Code § 63.2-1215.[5] In 2011, the Supreme Court of Virginia decided *Kummer v. Donak*, 282 Va. 301

---

[5] No party or beneficiary has argued that Patricia Reidmann's status as a beneficiary should be determined in reference to Germany's adoption laws or what those laws are.

10

(Va. 2011), which involves facts similar to those in this case. In *Kummer*, an adoptee's children claimed to be the intestate heirs of the adoptee's biological sister arguing that § 63.2-1215 did not limit their ability to inherit intestate from their mother's biological family. *Id.* at 303, 305. The Supreme Court of Virginia rejected their claim and held that "their mother's adoption severed their inheritance rights." *Id.* at 307. Thus, *Kummer* precludes any recovery by Patricia Reidmann as a beneficiary. Accordingly, because her adoption terminated any relationship between Patricia Reidmann and the Decedent, Patricia Reidmann is not a beneficiary of the Decedent and cannot recover in this wrongful death action.

In sum, the presumption of legitimacy establishes that Stewart L. Skinner, Jr. is child of the Decedent's marriage to Mildred Skinner and has not been rebutted. Additionally, Patricia Reidmann's adoption terminates any legal relationship between her and the Decedent and excludes her from the category of beneficiaries under Virginia law. Accordingly, Stewart L. Skinner, Jr., Ulonda Skinner, Stethanie Skinner, and Stuart L. Skinner, Jr. are all the Decedent's children, and thus are statutory beneficiaries in this wrongful death action pursuant to Virginia law. *See* Va. Code § 8.01-53 (providing that the class of beneficiaries to whom a wrongful death award should be distributed includes "children of the deceased").

**B. Distribution of Settlement Proceeds**

When a court approves the compromise of a wrongful death action, but the beneficiaries "do not agree upon the distribution to be made," Virginia law requires that "the court shall direct such distribution as a jury might direct under § 8.01-52 as to damages awarded by them." Va. Code § 8.01-55. Virginia Code § 8.01-52 provides that the beneficiaries of this wrongful death action may recover damages related to:

1. Sorrow, mental anguish, and solace which may include society,

> companionship, comfort, guidance, kindly offices, and advice of decedent;
> 2. Compensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent;
> 3. Expenses for the care, treatment, and hospitalization of the decedent incident to the injury resulting in death;
> 4. Reasonable funeral expenses; and
> 5. Punitive damages may be recovered for willful or wanton conduct . . . .

Va. Code § 8.01-52. In this case, the parties and beneficiaries focus exclusively on subsection 1, namely damages based on sorrow, mental anguish, and loss of solace. Here, plaintiff's attorney's fees and costs are paid by all of the beneficiaries, because the recovery is for the benefit of all beneficiaries. Accordingly, the attorney's fees and costs discussed *supra* are paid first.[6] After attorney's fees and costs are paid, the remaining settlement sum of $326,250 available for distribution to the beneficiaries.

### i. Stuart L. Skinner, Jr. (plaintiff)

Plaintiff was clearly very close to his father. Deposition testimony establishes that plaintiff spent almost every day with the Decedent, uprooted his life to live with and to assist the Decedent, and cared for the Decedent during the Decedent's final illness. *See* Stuart L. Skinner Response (citing Depo. of Stuart L. Skinner, Jr. Tr. at 11:2-5, 20:17-21:16, 130:1-18, 132:3-134:11). Plaintiff testified that the Decedent was the "soul of the house" and that the Decedent's death touched every aspect of his life. *See* Depo. of Stuart L. Skinner Tr. at 130:1-18. Stethanie and Ulonda Skinner also testified at deposition that plaintiff had a very close relationship with the Decedent and that plaintiff, in essence, lost his best friend and confidant. Stethanie testified that Stuart L. Skinner, Jr. did "everything" for the Decedent. *See* Stuart L. Skinner Response (citing Depo. of Stethanie L. Skinner Tr. at 31:9-13). Ulonda L. Skinner testified that the

---

[6] Virginia Code § 8.01-52 provides that "[t]he court shall apportion the costs of the action as it shall deem proper."

Decedent's death was "a tremendous loss" for plaintiff, that "he's taking it really hard," and that plaintiff had "lost his best friend." *Id.* (citing Depo. of Ulonda L. Skinner Tr. at 50:12-18).

In sum, plaintiff has clearly suffered sorrow, mental anguish, and loss of solace resulting from the Decedent's death. Based on plaintiff's close relationship with the Decedent and his efforts during the Decedent's final illness, plaintiff's sorrow, mental anguish, and loss of solace is greater than that suffered by any of the other beneficiaries. It is therefore appropriate to award plaintiff a distribution of $166,896 from the settlement proceeds to compensate plaintiff for his loss.

### ii. Ulonda L. Skinner

All parties also agree that Ulonda L. Skinner suffered a loss from the Decedent's death resulting in sorrow and mental anguish. Testimony from her deposition demonstrates the relationship that she and her family had with the Decedent. Ulonda L. Skinner testified that the Decedent's death was a "hard loss" and that she missed his voice and his laughter. Depo. of Ulonda L. Skinner Tr. at 49:17-20. In the course of the telephonic hearing, Ulonda L. Skinner asserted that the Decedent had also spent time living with her and that she viewed the Decedent as her last connection to the grandmother that raised her. Also, at the hearing, Ulonda L. Skinner noted that, although she originally agreed to a 60/20/20 split between plaintiff, Stethanie Skinner, and herself, she withdrew her agreement after she learned that plaintiff would not be solely responsible for paying attorney's fees.[7] Ulonda L. Skinner also argued that she grieved the loss of the Decedent when he abandoned the family as children and that, therefore, all of the children should be entitled to an equal recovery. Although the Decedent's alleged abandonment of his family is a loss, it is not one compensable by statute. Damages in this case are limited to the

---

[7] As discussed *supra*, because plaintiff's counsel worked to obtain a recovery on behalf of all beneficiaries, the attorney's fees and costs are paid first out of the settlement proceeds and thus are paid for by all of the beneficiaries.

suffering, mental anguish, and loss of solace that is a result of the Decedent's death; anger toward the Decedent for the Decedent's past acts is not recoverable under Va. Code § 8.01-52.

Ulonda L. Skinner has clearly suffered sorrow, mental anguish, and loss of solace as a result of the Decedent's death. She described the Decedent's death as a hard loss for her. By her own deposition testimony, however, it appears that Ulonda L. Skinner was not as close to the Decedent as plaintiff and did not provide the end-of-life care to the Decedent that was provided by plaintiff. Accordingly, Ulonda L. Skinner's damages resulting from the Decedent's death are less than those of plaintiff. It is therefore appropriate to award Ulonda L. Skinner a distribution of $77,177 from the settlement proceeds to compensate her for her loss.

### iii. Stethanie L. Skinner

All parties also agree that the Decedent's death caused Stethanie L. Skinner to suffer sorrow, mental anguish, and loss of solace. At her deposition, Stethanie L. Skinner testified that she did not have words to describe how the loss of the Decedent affected her and noted that the Decedent was a connection to her family and that the Decedent was her last connection to her grandmother. Depo. of Stethanie L. Skinner Tr. at 49:21-50:6. In the course of the telephonic hearing, Stethanie asserted that she cared for the Decedent when he returned to the United States from Germany and that the Decedent spent time living with her. Stethanie also asserted that she had never agreed to a 60/20/20 distribution of the settlement proceeds. Like Ulonda L. Skinner, Stethanie L. Skinner argued that the distribution of the settlement proceeds should be equal because she grieved her father's absence from her life from 1976 to 2000. The record does not support an equal distribution of the settlement proceeds among the beneficiaries. Again, the loss felt by the perceived abandonment of the Decedent is not a compensable loss under Virginia Code § 8.01-52.

14

All parties agree that Stethanie L. Skinner suffered sorrow, mental anguish, and loss of solace from the Decedent's death and the record in this case, including Stethanie L. Skinner's deposition testimony, supports this conclusion. By her own deposition testimony, it appears that Stethanie L. Skinner was not as close to the Decedent as plaintiff and did not provide the end-of-life care to the Decedent that was provided by plaintiff. Accordingly, Stethanie L. Skinner's damages resulting from the Decedent's death are less than those of plaintiff. It is therefore appropriate to award Stethanie L. Skinner a distribution of $77,177 from the settlement proceeds to compensate her for her loss.

### iv. Stewart L. Skinner, Jr.

The beneficiaries dispute whether Stewart L. Skinner is entitled to any distribution of the settlement proceeds. As was made clear at Stewart L. Skinner, Jr.'s deposition, the relationship between Stewart L. Skinner, Jr. and the Decedent was not close. The following exchange occurred during the deposition:

> Q: Outside of seeing him in person, your father, did you ever talk to him?
> A: No.
> Q: Did you ever communicate in any other way like text or –
> A: No.
> Q: -- e-mail?
> A: No.
>   .     .     .
>
> Q: Did you ever help your father when he was sick?
> A: No.

Depo. of Stewart L. Skinner Jr. Tr. at 22:2-23:7. Stewart L. Skinner, Jr. further testified that his relationship with the Decedent "wasn't good" and that he "had no respect for [the Decedent]." *Id.* at 26:10-13. In the course of the telephonic hearing, Stewart L. Skinner expressed his anger at the Decedent's abandonment of him. Anger toward a familial decedent is not, however, compensable under Virginia Code §8.01-52. Importantly, however, Stewart L. Skinner also

15

testified that the Decedent's death left him without an opportunity to reconnect and obtain closure. Stewart L. Skinner, Jr. "wanted to sit down and have a conversation with [the Decedent] about why he did that. And now I'll never have that chance to do that." *Id.* at 32:2-11. At the telephonic hearing, Stewart L. Skinner, Jr. similarly spoke of that missed opportunity haunting him. The mental anguish and sorrow associated with the lost opportunity to resolve his relationship with his absent father, make peace, and have closure is compensable under Virginia Code § 8.01-52. *See Meeks v. Emiabata*, No. 7:14-cv-534, 2015 WL 6760491, at *3 (W.D. Va. Nov. 5, 2015) (holding that Virginia Code § 8.01-52 permits recovery for the lost "possibility of reconnecting or of making peace" in wrongful death action). Any such damages, however, are diminished by the fact that Stewart L. Skinner, Jr. did not take such steps towards resolution during the Decedent's lifetime. *See id.* (awarding damages of $5,000 to beneficiaries who did not have a close relationship with their deceased brother but lost the opportunity to make peace).

Although Stewart L. Skinner, Jr. did not have a close relationship with the Decedent, it is clear that he did suffer some mental anguish from the death of the Decedent. As he stated at the hearing, the lost opportunity to talk with the Decedent and obtain some closure or peace haunts Stewart L. Skinner, Jr. It is also clear, however, that this lack of closure did not move Stewart L. Skinner, Jr. to action during the Decedent's lifetime. Any damages suffered by Stewart L. Skinner, Jr. are thus minimal. It is therefore appropriate to award Stewart L. Skinner, Jr. a distribution of $5,000 from the settlement proceeds to compensate him for his loss.

## IV.

For the reasons set forth above, the parties' joint motion for settlement approval will be granted. The settlement amount of $475,000, inclusive of attorney's fees and costs, is fair, just, and reasonable. Additionally, given the extensive discovery in this case, the attorney's fees and

costs sought, in the total amount of $148,750, are reasonable. Pursuant to Virginia law, the statutory beneficiaries in this wrongful death suit include: (i) plaintiff, who is awarded $166,896 of the settlement proceeds; (ii) Ulonda L. Skinner, who is awarded $77,177 in settlement proceeds; (iii) Stethanie L. Skinner, who is awarded $77,177 in settlement proceeds; and (iv) Stewart L. Skinner, Jr., who is awarded $5,000 in settlement proceeds.

An appropriate order will issue separately.

The Clerk of the Court is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
September 9, 2020

/s/
T. S. Ellis, III
United States District Judge

17